UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
JUAN ESCOBAR,

                               Plaintiff,

        -against-

DEL MONACO BROTHERS INDUSTRIES
INC., LOW-PRO TOWING & TRANSPORT
INC., POMARC INDUSTRIES INC., BLACK
STEEL, INC., MICHAEL DEL MONACO, and
LAWRENCE DEL MONACO,

                           Defendants.
---------------------------------------------------------------x

**REPORT AND
RECOMMENDATION**
14-CV-3091 (ADS)(SIL)

**LOCKE, Magistrate Judge:**

Presently before the Court, on referral from the Honorable Arthur D. Spatt for

Report and Recommendation, is Plaintiff Juan Escobar's ("Plaintiff" or "Escobar")

motion for summary judgment. *See* Docket Entry ("DE") [31]. By way of Complaint

filed May 16, 2014, Escobar commenced this wage and hour action against

Defendants Del Monaco Brothers Industries Inc. ("Del Monaco Brothers"), Low-Pro

Towing & Transport Inc. ("Low-Pro"), Pomarc Industries Inc. ("Pomarc"), Black Steel,

Inc. ("Black Steel," and, collectively the "Corporate Defendants"), Michael Del

Monaco, and Lawrence Del Monaco (together with Corporate Defendants,

"Defendants") alleging: (1) failure to compensate for overtime hours worked in

violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the

New York Labor Law ("NYLL"), N.Y. Lab. Law § 650 *et seq.*; (2) failure to pay the

minimum wage in violation of the FLSA and NYLL; (3) failure to provide pay stubs

in accordance with NYLL § 195(3); (4) failure to provide Plaintiff with a notice and

acknowledgement of wage rate pursuant to NYLL § 195(1); (5) breach of an oral contract; (6) breach of an implied contract; (7) unjust enrichment; and (8) quantum meruit. DE [1]. All Defendants filed an answer with the exception of Black Steel, but a Certificate of Default was never obtained against it. On September 11, 2015, Escobar moves for summary judgment on all causes of action. DE [31]. In a letter dated October 23, 2015, Defendants informed the Court that it would not oppose the motion. *See* DE [34]. On April 14, 2016, Judge Spatt referred the unopposed motion to this Court for a Report and Recommendation as to whether Plaintiff has met his summary judgment burden, and if so, whether damages should be awarded, including reasonable attorneys' fees and costs. DE [36].

For the reasons set forth herein, the Court respectfully recommends that summary judgment be granted as to: (1) Escobar's unpaid overtime and minimum wage claims under the FLSA and NYLL; (2) violation of the NYLL regarding Defendants' duty to provide pay stubs and a notice and acknowledgment of wage rate; (3) breach of an oral contract regarding a reduction in wages from November 2009 through April 16, 2010; and (4) liquidated damages, specifically that Escobar is entitled to liquidated damages under both the FLSA and NYLL. Regarding damages, the Court recommends that Plaintiff be awarded: (1) compensatory and statutory damages amounting to $159,314.01, comprised of: $147,806.24 in unpaid overtime, $1,507.77 in minimum wage damages, $5,000 for failure to provide pay stubs, and $5,000 for failure to provide a notice and acknowledgment of wage rate; (2) liquidated damages amounting to $173,562.08, comprised of: $76,441.29 under the FLSA and

$97,120.79 under the NYLL; and (3) $69,921.18 in pre-judgment interest, accruing at a daily rate of $36.82 until judgment is entered.  The Court further recommends that no damages be awarded as to Escobar's breach of contract claim, because, although liability exists as a matter of law, there is a question of fact as to the amount of damages.

## I.    Background

All facts are undisputed unless otherwise noted.

### A.    <u>Pertinent Facts</u>

#### 1.    <u>The Relevant Parties</u>

From 1992 until approximately January 2014, Juan Escobar was an employee of Defendants Del Monaco Brothers, Low-Pro Towing, and Pomarc.  *See* Plaintiff's Statement of Undisputed Facts Pursuant to Rule 56.1 Of the Local Civil Rules of the United States District Court for the Southern and Eastern Districts of New York ("Pl. 56.1 Stmt."), DE [31-5], ¶ 21; Affidavit in Support of Motion for Summary Judgment ("Escobar Aff."), DE [31-1], ¶ 3.  Low-Pro, Del Monaco Brothers, and Pomarc are all in the construction business and have shared, and continue to share, the same office, phone number, equipment, and employees.  Pl. 56.1 Stmt. ¶¶ 1-3.

Individual Defendant Lawrence Del Monaco is the sole shareholder of Pomarc, and owns 50% of the shares in Del Monaco Brothers.  *Id.* at ¶¶ 1, 6.  Rarely present on job sites, his main role is to manage personnel files and oversee the Del Monaco Brothers office.  *Id.* at ¶¶ 9, 18.  Michael Del Monaco is the sole shareholder of Low Pro, and a 50% shareholder of Del Monaco Brothers.  *Id.* at ¶¶ 3, 6.  He is involved in

job sites, overseeing the yard, setting up jobs, and supervising workers. *Id.* at ¶¶ 12-15, 17. Both Michael and Lawrence Del Monaco have the authority to hire and fire employees, discipline employees, determine employees' pay, and schedule employees' work hours. *Id.* at ¶ 8.

## 2. Plaintiff's Employment With Defendants

Escobar served as a concrete finisher for Defendants, installing stoops and patios, doing brickwork, laying asphalt, mixing mortar, and digging holes. *Id.* at ¶¶ 28-29; Escobar Aff. ¶ 3. He had no managerial duties, and did not train co-workers or hire or fire other employees. Pl. 56.1 Stmt. ¶¶ 22-23. Lawrence and Michael Del Monaco were his direct supervisors. Escobar Aff. ¶ 32.

Plaintiff's typical shift lasted from 7:00 a.m. to 4:00 p.m., although he would arrive at the yard as early as 6:30 a.m. Pl. 56.1 Stmt. ¶¶ 30-31; Escobar Aff. ¶ 9. When he arrived at the yard, Lawrence and Michael Del Monaco would discuss the day's job. Pl. 56.1 Stmt. ¶ 32. After the job, Escobar would typically return to the yard. *Id.* at ¶ 35. He claims that he typically worked six, and occasionally seven, days per week. *Id.* at ¶ 37. Overall, Plaintiff contends that he worked approximately 57 hours per week, and sometimes more if he worked seven days a week. Escobar Aff. ¶ 13. Escobar was not paid time-and-a-half for weeks that he worked in excess of 40 hours. Pl. 56.1 Stmt. ¶ 55.

Escobar was never provided with a statement setting forth his wage. *Id.* at ¶ 52. He claims that for the last six years of his employment he was paid $1,250.00 per week for labor Monday through Friday, with an additional $250.00 for each Saturday

4

or Sunday that he worked.  Escobar Aff. ¶ 19; Pl. 56.1 Stmt. ¶¶ 50-51.  However, from November 2008 through November 2009, he was paid $500.00 for each Saturday or Sunday.  Escobar Aff. ¶ 23.  Escobar was paid with checks and cash throughout his employment, with the exception of 2013 when he was paid only in cash and never received a pay stub.  Pl. 56.1 Stmt. ¶¶ 41-42.  Weekend work was never reflected on his pay stubs as this amount was also paid in cash.  Escobar Aff. ¶¶ 21-24.

Plaintiff also asserts that Defendants underpaid him at certain points during his employment.  Specifically, in November 2009, Michael Del Monaco asked Escobar to work his regular schedule but accept less wages for a short period of time.  Escobar Aff. ¶ 37.  In return, Michael Del Monaco agreed to pay Plaintiff the difference between his regular pay at some point in the future.  *Id.*  Although Escobar agreed, the difference was never provided and Plaintiff states that he received "$10,045.32 less than what I should have been paid during [November 20, 2009 through April 16, 2010]."  *Id.* at ¶ 38.  He claims that no payments have ever been made toward this debt.  *Id.* at ¶ 39.  Escobar also asserts that he was not compensated for his last three weeks of employment.  Pl. 56.1 Stmt. at ¶ 56.

### 3.  Defendants' October 21, 2015 Letter To The Court

In a letter to the Court dated October 23, 2015, defense counsel advised that Defendants would not oppose Plaintiff's motion for summary judgment.  *See* Defendants' 10/23/15 Ltr. to Court, DE [34], 1.  Recognizing a lack of triable questions of fact, the letter explains that "[t]he reality is this is a financial relationship that was established between the parties beginning twenty (20) years ago[.] [W]hile it may

be frowned upon by the Federal Fair Labor Standards Act, it is in reality how many small businesses on Long Island operate in these difficult economic times." *Id.* Although admitting that the companies' practices "do[] not satisfy the theoretic goals of the Federal Fair Labors Standards Act," the "intent was to make certain that the employees were paid fairly and in accordance with the understanding between the parties." *Id.* In closing, the letter explains that the "violations were not egregious and were truly meant to maintain the plaintiff's employment during this past great recession." *Id.* at 2.

### B. <u>Procedural History</u>

By way of Complaint filed May 16, 2014, Escobar commenced this action alleging FLSA, NYLL, and breach of contract claims against Defendants. *See* DE [1]. All Defendants answered with the exception of Black Steel. DE [9]. On September 11, 2015, Escobar filed the instant motion for summary judgment. DE [31]. Defendants failed to oppose this motion, and on October 21, 2015, the Court issued an order directing Defendants to file a letter explaining why the Court should not construe Plaintiff's motion as unopposed. *See* Electronic Order dated October 21, 2015. As set forth above, in response to the Court, Defendants explained that it was not opposing Escobar's motion. Defendants' 10/23/15 Ltr. to Court. On April 14, 2016, the Honorable Arthur D. Spatt referred the motion to this Court to determine whether Escobar has met his summary judgment burden and, if so, whether damages should be awarded and in what amount. DE [36].

## II.    Legal Standard

Pursuant to Fed. R. Civ. P. 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In deciding a motion for summary judgment, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986) (holding that a motion for summary judgment should be denied if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").  Once the movant has met its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356 (1986) (internal quotation marks omitted); *see also Maxton v. Underwriter Labs., Inc.*, 4 F. Supp. 3d 534, 542 (E.D.N.Y. 2014) ("An issue of fact is considered 'genuine' when a reasonable finder of fact could render a verdict in favor of the non-moving party.").

If a motion for summary judgment is unopposed, the Court "must determine whether the legal theory of the motion is sound." *Jackson v. Fed. Exp.*, 766 F.3d 189, 194 (2d Cir. 2014).  Further, "a court 'may not grant the motion without first

examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial.'" *Flanagan v. Citi Grp. Demolition Partners, Inc.*, No. 13-CV-6024, 2016 WL 843288, at *2 (E.D.N.Y. Mar. 1, 2016) (citing *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2011)). "Before summary judgment may be entered, the district court must ensure that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden of production even if the statement is unopposed." *Jackson*, 766 F.3d at 194.

## III. Discussion

### A. Liability Under The FLSA

The FLSA "imposes numerous 'wage and hour' requirements, including establishing a minimum wage and requiring overtime pay," both of which are at issue here. *D'Arpa v. Runway Towing Corp.*, No. 12-CV-1120, 2013 WL 3010810, at *3 (E.D.N.Y. June 18, 2013) (citing 29 U.S.C. §§ 206, 207). For the reasons set forth below, the Court respectfully recommends that Plaintiff's motion for summary judgment be granted as to his FLSA claims.

#### 1. Employer/Employee Relationship

Escobar must first establish that Defendants are employers under the FLSA and are engaged in interstate commerce. *See* 29 U.S.C. § 207; *D'Arpa*, 2013 WL 3010810, at *13 (E.D.N.Y. June 18, 2013). The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d). To determine whether an individual is an "employer," the Second Circuit utilizes the economic realities test which focuses on

8

"whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Irizarry v. Catsimatidis*, 722 F.3d 99, 104-05 (2d Cir. 2013). Further, an employer is subject to the FLSA if it engages in interstate commerce under one of two theories of coverage: (1) individual coverage, where an employee is "engaged in commerce or in the production of goods for commerce;" or (2) enterprise coverage, where an employee is "employed by an enterprise engaged in interstate commerce or in the production of goods for interstate commerce." *See Valdez v. H & S Rest. Operations, Inc.*, No. 14-CV-4701, 2016 WL 3079028, at *2 (E.D.N.Y. Mar. 29, 2016), (Report and Recommendation), *adopted by*, 2016 WL 3087053 (E.D.N.Y. May 27, 2016). An "enterprise engaged in interstate commerce" is an entity "whose annual gross volume of sales made or business done is not less than $500,000" and has employees that engage in interstate commerce. 29 U.S.C. § 203 (s)(1).

Here, Plaintiff has established as a matter of law that Defendants are employers under the FLSA. It is undisputed that Escobar worked for Corporate Defendants throughout his employment. Pl. 56.1 Stmt. ¶ 21. Also, the Individual Defendants "had the authority to hire and fire employees, to discipline employees . . . to determine employee's pay and . . . to schedule employee's work hours," *id.* at ¶ 8, which is sufficient under the economic realities test to establish them as employers under the FLSA. *See Moon v. Kwon*, 248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002) ("The overwhelming weight of authority is that a corporate officer with operational control

of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages.") (citation omitted).

The Court further finds that Defendants are an enterprise engaged in interstate commerce. As Defendants are engaged in the construction business, Plaintiff inevitably handled materials and tools that travelled interstate. As such, Defendants engaged in interstate commerce.[1] *See Mazza v. Dist. Council of New York*, No. CV-00-6854, 2007 WL 2668116, at *9 (E.D.N.Y. Sept. 6, 2007) ("The [] Defendants do not dispute that they are in the construction business, which necessitates the use of both tools and materials that have invariably traveled in interstate commerce."). Although Escobar does not assert in his motion that Defendants' revenue exceeded $500,000, the Court finds that the particular facts of this case support that Defendants are subject to the FLSA. Defendants chose not to oppose Plaintiff's motion for summary judgment, and, in doing so, conceded statutory liability. *See* Defendants' 10/23/15 Ltr. to Court ([T]he defendants are not opposing plaintiff's motion but believe that the violations were not egregious . . . ."). By admitting to the unlawful violating conduct, Defendants agreed that they are subject to the FLSA. *See Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 86 (E.D.N.Y. 2012) (finding that defendant is subject to the FLSA because the defendant did not

---

[1] Some courts have rejected the notion of inferring interstate commerce based upon the nature of an employer's business. *See, e.g.*, *Marin v. JMP Restoration Corp.*, No. 09-CV-1384, 2012 WL 4369748, at *3 (E.D.N.Y. Aug. 24, 2012), (Report and Recommendation), *adopted by*, 2012 WL 4364671 (E.D.N.Y. Sept. 24, 2012). However, in light of the particular facts of this case, such as Defendants' admission of violations of the FLSA and their decision not to oppose the motion, the Court finds such an inference appropriate.

deny statutory coverage and did not move for summary judgment on such grounds). As such, the Court finds it appropriate to hold Defendants liable under the FLSA.

Accordingly, the Court recommends that Defendants be deemed employers, such that they can be held jointly and severally liable under the FLSA.

### 2. Burden To Prove Uncompensated Wages

The employee bears the burden of proving his uncompensated work. *See Jiao v. Shi Ya Chen*, No. 03 CIV. 0165, 2007 WL 4944767, at *2 (S.D.N.Y. Mar. 30, 2007) (quoting *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687, 66 S. Ct. 1187, 1192 (1946)) ("Under the FLSA, an employee seeking to recover unpaid minimum wages or overtime 'has the burden of proving that he performed work for which he was not properly compensated.'").   However, employers must maintain accurate records of employee hours.  *See id.*; 29 U.S.C. § 211(c) ("Every employer subject to any provision of this chapter . . . shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment . . . .").  "When an employer's records are inadequate, an employee may meet [his] burden by producing 'sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'" *Padilla v. Manlapaz*, 643 F. Supp. 2d 302, 307 (E.D.N.Y. 2009) (quoting *Rivera v. Ndola Pharmacy Corp.,* 497 F. Supp. 2d 381, 388 (E.D.N.Y. 2007)).  In doing so, a plaintiff may rely "solely on his or her recollection." *Rivera*, 497 F. Supp. 2d at 388.  However, "the district court is not permitted to 'just accept [plaintiff's] statement of the damages.'"  *Hosking v. New World Mortg., Inc.*, 570 F. App'x 28, 32 (2d Cir. 2014) (summary order) (quoting

*Transatl. Marine Claims Agency v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)). Rather, as set forth above, the amount of uncompensated work allegedly performed must be "just and reasonable." *Id.*; *see also Daniels v. 1710 Realty LLC*, 497 F. App'x 137, 139 (2d Cir. 2012).

To support his claim for unpaid wages and overtime, Escobar has submitted W-2s and pay stubs which cover sporadic periods of his employment. *See* Affirmation in Support of Motion for Summary Judgment ("Feather Aff."), DE [31-2], Ex. G (Compensation Report), DE [31-9]; Ex H. (Low-Pro Employee Earnings Record), DE [31-10]; Ex. I (Del Monaco Brothers Employee Earnings Record), DE [31-11]; Ex. J. (Pay Stubs), DE [31-12]. Plaintiff contends that his W-2 statements and pay stubs are inaccurate as they do not encompass payments made to him in cash, which is how he was paid throughout 2013 and for all work on the weekends. Pl. 56.1 Stmt. ¶¶ 42, 54. Indeed, Defendant Lawrence Del Monaco testified that Escobar was paid for weekend work in cash, and that cash payments for hours worked on a Saturday would not be reflected in Escobar's pay stubs. *See* Feather Aff. Ex. E (Lawrence Del Monaco Deposition), DE [31-7], 70:2-18. He further admitted that there are no records of the exact hours that Plaintiff worked. *Id.* at 89:4-8. Where, as here, "defendants failed to preserve or present employment records . . . plaintiff can rely on [his] recollection to establish the number of hours worked for those periods." *Padilla*, 643 F. Supp. 2d at 308.

Turning to Escobar's recollection of hours worked, he claims that he worked approximately 9-10 hours per day for six days a week, averaging 57 hours weekly.

Escobar Aff. ¶¶ 8, 13.  He claims that for the last six years of his employment he worked "almost every Saturday."  *Id.* at ¶ 21.  Regarding Sundays, he states that "he sometimes" worked seven days a week.  *Id.* at ¶ 13. The Court credits Escobar's recollection that he worked approximately 57 hours per week, and that he worked almost every Saturday.  The Court declines to honor Plaintiff's statement that he worked seven days a week, presumably Sundays, because simply alleging that he "sometimes" worked Sundays is insufficient to establish a "just and reasonable inference" of uncompensated work.  *See Hosking*, 570 F. Appx. at 32 (finding employees did not meet their burden where they did not provide information "from which the district court could extrapolate a damages amount").

Regarding wages, Escobar claims that he earned $1,250.00 for working Monday through Friday, which he reduces to an hourly rate of $31.25.  Escobar Aff. ¶¶ 19-20.  He also was paid $250.00-$500.00 for each Saturday or Sunday he worked.  *Id.* at ¶¶ 22-23.  Consistent with his recollection, Plaintiff submits some pay stubs that show an hourly rate ranging from $28.75 to $31.25.  *See* Pay Stubs at 13, 49 (showing an hourly rate of $28.75 in 2009 and $31.25 in 2012).  Further, Lawrence Del Monaco confirmed that Escobar was paid $250.00 for working Saturdays.  *See* Lawrence Del Monaco Deposition 69:3-7.  As such, the Court finds that Escobar's recollection that he was paid an hourly rate of $31.25 and $250.00 for Saturday work is supported by a "just and reasonable inference."  *See Padilla*, 643 F. Supp. 2d at 307 (stating that a court may award damages, even if they are an approximate, if the employer fails to maintain adequate records).

Accordingly, the Court recommends a finding that Escobar met his burden of proving his compensation and hours worked, specifically 57 hours worked per week at an hourly rate of $31.25, with an additional $250.00 for each Saturday worked.

### 3.  Overtime

The Court now turns to the substance of the overtime claim under the FLSA. As relevant here, the FLSA provides:

> [N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).  "At the summary judgment stage, the plaintiff must 'produce sufficient evidence to show the amount and extent of that [uncompensated work] as a matter of just and reasonable inference.'" *Eschmann v. White Plains Crane Serv., Inc.*, No. 11-CV-5881, 2014 WL 1224247, at *4 (E.D.N.Y. Mar. 24, 2014) (quoting *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011)).  A plaintiff must also prove "that the employer had actual or constructive knowledge of that work." *D'Arpa*, 2013 WL 3010810, at *14 (quotation omitted).

The record establishes that Escobar was not paid overtime for hours worked in excess of forty each week.  As set forth above, Escobar established that he worked 57 hours per week with an hourly rate of $31.25.  Escobar Aff. ¶¶ 8, 19.  As such, Plaintiff was entitled to overtime at time and a half of his hourly rate, which is approximately $46.88.  At this rate, Escobar was entitled to $2,046.96 each week.  He claims he

typically only received $1,500.00 per week, $1,250.00 for work performed Monday through Friday, and $250.00 for work performed on Saturday.  Escobar Aff. ¶¶ 19-22.  Therefore, Plaintiff has established, as matter of just and reasonable inference, the extent of the uncompensated work due to overtime hours as $546.96 per week during the relevant time period.  Accordingly, the Court recommends that Defendants be found liable of violating the overtime provision of the FLSA.

### 4. Minimum Wage

Escobar contends that he was not paid any wages for his last three weeks of work and thus his minimum wage rights were violated. Pl. 56.1 Stmt. ¶ 56.  The FLSA requires that "every employer shall pay to each of his employees who in any workweek is engaged in commerce . . . [the minimum wage]."  29 U.S.C. § 206(a). Defendants do not dispute Plaintiff's assertion; indeed, Lawrence Del Monaco testified that Escobar is owed payment for his last three weeks of work.  *See* Lawrence Del Monaco Deposition 49:15-18; 50:11-13.  As there is no question of fact as to this issue, the Court recommends that Defendants also be found liable for violating the minimum wage provision of the FLSA.

### B.   Liability Under The NYLL

Escobar also seeks summary judgment concluding that Defendants violated the overtime and minimum wage provisions of the NYLL, as well as failed to provide pay stubs and a notice of his wage as required by state law.  For the following reasons, the Court recommends that Escobar's motion be granted as to all of his NYLL claims.

1.  Overtime And Minimum Wage

"The New York Labor Law 'is the state analogue to the federal FLSA.'" *D'Arpa*, 2013 WL 3010810, at *18 (quoting *Santillan v. Henao*, 822 F. Supp. 2d 284, 292 (E.D.N.Y. 2011)).  As such, its "definition of employment is nearly identical to that of the [federal statute]."  *See Juarez v. Precision Apparel, Inc.*, No. 12-CV-2349, 2013 WL 5210142, at *7 (E.D.N.Y. Sept. 13, 2013).  Furthermore, as Judge Gleeson explained in *D'Arpa*, the NYLL:

> . . . echoes the FLSA in compensation provisions regarding overtime and minimum wage requirements. *Chun Jie Yin v. Kim*, 07-cv-1236, 2008 U.S. Dist. LEXIS 118533, [ ] at *4 [(E.D.N.Y. Mar. 7, 2008) (Report and Recommendation), *adopted by,* 2008 U.S. Dist. LEXIS 27040 (E.D.N.Y. Apr. 3, 2008)]; *Jemine v. Dennis*, 901 F. Supp. 2d 365, 375 (E.D.N.Y. 2012) ("The New York Labor Law mirrors the FLSA in most aspects, including its wage and overtime compensation provisions."); *see* 12 N.Y.C.R.R. §§ 142-2.1-2.2. The NYLL, like the FLSA, requires that employers pay one and one-half times an employee's regular rate of work performed in excess of forty hours a week.

*D'Arpa*, 2013 WL 3010810, at *18.  Due to the similarities, a court approaches FLSA and NYLL claims in the same manner.  *See, e.g.*, *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 360 (E.D.N.Y. 2015) ("[C]ourts in the Second Circuit have generally applied their analysis of a plaintiff's FLSA claim to a plaintiff's NYLL claim due to the substantial similarity in the provisions.").  Accordingly, for the reasons set forth above regarding the FLSA, the Court finds that Defendants violated the overtime and minimum wage provisions of the NYLL.  *See D'Arpa*, 2013 WL 3010810, at *18 ("For the reasons discussed above with respect to Plaintiffs' FLSA overtime claim, I grant summary judgment to all Plaintiffs on the NYLL overtime claim.") (citation omitted).

2.  <u>Failure To Provide Pay Stubs</u>

Escobar also seeks summary judgment concluding that Defendants violated section 195(3) of the NYLL for failing to provide him with pay stubs throughout 2013. *See* Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment ("Pl. Mem. Law"), DE [31], 18-19.   Pursuant to NYLL § 195(3), every employer shall "furnish each employee with a statement with every payment of wages . . . ."  N.Y. Lab. Law § 195(3).  If an employer violates NYLL § 195(3), the employee can recover $250.00 for each work day that the violation occurred, not to exceed $5,000.  N.Y. Lab. Law § 198(1-d).  Here, Escobar asserts that he did not receive any pay stubs in 2013.  Pl. 56.1. Stmt. ¶ 42.  In Defendants' opposition to Escobar's Rule 56.1 statement, they claim that "Plaintiff received pay stubs in 2013."  *See* Defendants' Del Monaco Brothers Industries Inc., Low-Pro Towing & Transport Inc., Pomarc Industries Inc., Michael Del Monaco and Lawrence Del Monaco, Opposition Of Plaintiff's Statement of Undisputed Facts Pursuant to Rule 56.1 Of the Local Civil Rules of the United States District Court for the Southern and Eastern Districts of New York ("Defs. 56.1 Stmt."), DE [31-6].   However, to support this assertion, Defendants cite to "Defendants' Affidavit in Opposition to Motion for Summary Judgment," a document that has not been filed in connection with this motion and that the Court has never seen.  As Defendants fail to cite to admissible evidence to support their position, the Court deems Plaintiff's statement admitted, and recommends that Defendants be found liable for violating NYLL § 195(3) for failure to provide pay stubs in 2013.  *See* *Dolan v. Select Portfolio Servicing*, No. 03-CV-3285, 2016 WL 3512196, at *1, n. 4

(E.D.N.Y. June 22, 2016) ("Where a party either (i) admits or (ii) denies without citing to admissible evidence facts alleged in the opposing party's Local Rule 56.1 Statement, the Court shall deem such facts undisputed.").

        3.  <u>Failure To Provide A Notice and Acknowledgment Of Wage Rate</u>

Escobar also seeks summary judgment concluding that Defendants failed to provide Plaintiff with a notice and acknowledgment of his wage rate in violation of section 195(1) of the NYLL. *See* Pl. Mem. Law at 18-19. Under NYLL § 195(1)(a), employers must provide their employees at the time of hiring notices containing the rate of the employees' pay, allowances, and the name, physical and mailing address, and telephone number of the employer. *See* N.Y. Lab. Law § 195(1)(a). Failure to do so can result in a penalty of $50.00 each day that the violation occurs, not to exceed $5,000. *Id.* at § 198(1-b). Here, Defendants do not dispute that Escobar was never provided with such a notice. Pl. 56.1. Stmt. ¶ 58; *see Tackie v. Keff Enters. LLC*, No. 14-CV-2074, 2014 WL 4626229, at *6 (S.D.N.Y. Sept. 16, 2014) (finding a violation of § 195(1)(a) where a plaintiff never received a wage notice). Accordingly, as there is no question of fact, the Court recommends that Plaintiff's motion for summary judgment for failure to provide a wage notice be granted.

## C.    **Breach Of Contract Claim**

Plaintiff also seeks summary judgment on his seventh, eighth, ninth, and tenth causes of action: breach of oral contract, breach of implied contract, unjust enrichment, and quantum meruit. Pl. Mem. Law at 20. Specifically, Plaintiff contends that in 2009 Michael Del Monaco asked if Escobar would work for less than

his agreed upon wage for a temporary period, with a promise that he would be repaid the difference in the future. Escobar Aff. ¶ 37.  Plaintiff agreed, and worked for reduced wages from November 2009 through April 16, 2010.  *Id.* at ¶ 38.  Escobar now contends that he never received the difference in wages.  *Id.* at ¶¶ 38-39.

The elements of a breach of contract claim are:  "(1) formation of a contract between plaintiff and defendant; (2) performance by plaintiff; (3) defendant's failure to perform; and (4) resulting damage." *Seneca Ins. Co., Inc. v. Air Prof'l Assocs., LLC*, No. 14-CV-7330, 2016 WL 3087062, at *4 (S.D.N.Y. May 31, 2016) (quoting *Clearmont Prop., LLC v. Eisner*, 58 A.D.3d 1052, 1055, 872 N.Y.S.2d 725, 728 (3d Dep't 2009) (citation omitted)).  To form a contract under New York law, a plaintiff must establish an offer, acceptance, and consideration.  *See Lumhoo v. Home Depot USA, Inc.*, 229 F. Supp. 2d 121, 161 (E.D.N.Y. 2002) (analyzing the existence of an oral contract).  To determine "whether the parties entered into a contractual agreement ... it is necessary to look ... to the objective manifestations of the intent of the parties as gathered by their expressed words and deeds." *Id.*  (quoting *Brown Bros. Elec. Contractors v. Beam Constr. Corp.,* 41 N.Y.2d 397, 399, 393 N.Y.S.2d 350, 352 (1977)).  Further, "the existence of a contract may be established through conduct of the parties recognizing the contract." *Apex Oil Co. v. Vanguard Oil & Serv. Co.*, 760 F.2d 417, 422 (2d Cir. 1985).

Applying the standard above, the Court finds that Escobar established a breach of an oral contract as a matter of law.  The oral agreement between Michael Del Monaco and Escobar sufficiently formed a contract.  Michael Del Monaco orally

19

requested that Escobar work for a reduced wage for a short period of time, and Plaintiff accepted this proposal. *See* Escobar Aff. ¶ 37. Consideration is established by the detriment to Escobar in the form of delayed pay, and the benefit to Defendants in maintaining capital for a longer period. *See Granite Partners, L.P. v. Bear, Stearns & Co.*, 58 F. Supp. 2d 228, 252 (S.D.N.Y. 1999) ("Sufficient consideration, however, may be provided either by a benefit to a promisor or a detriment to the promisee."). As Defendants' letter to the Court explains that "defendant employer attempted to maintain employment for as many employees as possible so that they would not be without income" and that they "truly meant to maintain the plaintiff's employment during this past great recession," the Court finds that it is reasonable to assume that the intent behind the contract was to delay payment such that Defendants could maintain some level of income for its employees. *See* Defendants' 10/23/15 Ltr. to Court. All other elements of a breach of contract cause of action are met as Escobar performed under the contract by working for a reduced wage, Escobar Aff. ¶ 37, Defendants failed to perform by not paying Plaintiff as promised, *see* Feather Aff. Ex. F (Michael Del Monaco Deposition), DE [31-8], 78:12-25; 79:1-4 (stating that Escobar is owed money from November 2009 through April 16, 2010), and Plaintiff suffered damages in the difference between his actual and reduced wage.

Accordingly, the Court recommends a finding that there was a breach of contract such that Escobar is owed the difference between the wages received, and his normal wage, for the period of November 2009 through April 16, 2010. As this

claim seeks the same relief as the breach of implied contract, quantum meruit, and unjust enrichment claims, the Court need not address those causes of action.

## IV. Damages

Having established liability as to the various causes of action, the Court turns to the question of damages.

### A. Wage And Hour Damages

#### 1. Statute Of Limitations

##### i. *FLSA*

As "determination of damages requires consideration of the applicable limitations under each statute," the Court construes the applicable periods under the FLSA. *See Cortes v. Warb Corp.*, No. 14-CV-7562, 2016 WL 1266596, at *2 (E.D.N.Y. Mar. 15, 2016), (Report and Recommendation), *adopted by*, 2016 WL 1258484 (E.D.N.Y. Mar. 30, 2016). The statute of limitations under the FLSA is two years, but extends to three years for willful violations. *See* 29 U.S.C. § 255(a). A violation is willful if a plaintiff shows "that the employer either knowingly violated its obligations under the FLSA or showed reckless disregard for whether its conduct was prohibited by that statute." *Chen v. JP Standard Constr. Corp.*, No. 14-CV-1086, 2016 WL 2909966, at *5 (E.D.N.Y. Mar. 18, 2016), (Report and Recommendation), *adopted by*, 2016 WL 2758272 (E.D.N.Y. May 12, 2016). Although willfulness is typically left to the trier of fact, "courts have decided the question of willfulness at the summary judgment stage, [where] either the FLSA violation was due to a misclassification of the plaintiff as being exempt . . . or there existed no genuine

dispute that the employer had been on notice that it was subject to the FLSA." *Eschmann*, 2014 WL 1224247, at *5 (internal citation and quotation omitted).

Applying this standard, the Court concludes that Defendants' conduct was willful such that the three year statute of limitations applies. Defendants admit that they engaged in their payment practices in order to "make certain that the employees were paid fairly and in accordance with the understanding of the parties." *See* Defendants' 10/23/15 Ltr. to Court, 1. They further recognize that their behavior "may be frowned upon by the Federal Fair Labor Standards Act, [but] is in reality how many small businesses on Long Island operate in these difficult times." *Id.* These statements demonstrate a conscious decision on behalf of Defendants to choose a practice of payment they believed was fair despite the mandates of the FLSA. Such a choice—suggesting notice of the FLSA and a reckless disregard of its requirements—is willful. As the Complaint was filed on May 16, 2014, the Court recommends that the FLSA claims be timely going back three years to May 16, 2011.

### ii. *NYLL*

The limitations period under the NYLL is six years. *See* N.Y. Lab. Law § 198(3). A cause of action for a wage violation under the NYLL accrues "on the next regular payday following the work period when services are rendered." *Hernandez v. Prof'l Maint. & Cleaning Contractors Inc.*, No. 13-CV-2875, 2015 WL 128020, at *5 (E.D.N.Y. Jan. 8, 2015). Here, Plaintiff does not allege a specific date that his NYLL claims accrued. He does, however, state that he worked for Defendants from 1992 until approximately January 2014. Escobar Aff. ¶ 3. As the Complaint was filed on

May 16, 2014, the Court recommends that Plaintiff's NYLL claims be considered timely back to May 16, 2008.

### 2. Compensatory And Statutory Damages

Plaintiff seeks compensatory damages for his overtime and minimum wage claims under the FLSA and NYLL. "[P]laintiffs may not recover under both the FLSA and NYLL for the same injury," but can "recover under the statute that provides for the greatest relief." *Eschmann*, 2014 WL 1224247, at *7. As some of Escobar's claims are time-barred under the FLSA, the Court calculates Plaintiff's compensatory damages under the NYLL. Escobar further seeks statutory damages pursuant to state law.

### i. *Overtime Wages*

Pursuant to the implementing regulations of the NYLL, "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate . . . ." N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2; *see Peralta v. M & O Iron Works, Inc.*, No. 12-CV-3179, 2014 WL 988835, at *7 (E.D.N.Y. Mar. 12, 2014). As established above, Plaintiff worked approximately 57 hours per week, had an hourly rate of $31.25, and therefore had an overtime rate of approximately $46.88.

Escobar's overtime calculation is divided into two periods. The first is for May 16, 2008 through October 31, 2008 and November 1, 2009 through January 1, 2014, where Plaintiff received $1,250 for work performed Monday through Friday and $250.00 per Saturday. For this period, Escobar is entitled to an additional $546.96

per week.[2]   As this period encompasses 1,690 days or approximately 242 weeks, Plaintiff is entitled to $132,364.32 in unpaid overtime for this period.   The second period is November 1, 2008 through October 31, 2009, where Escobar received $500.00 for work performed on Saturday, or $1,750.00 total.   For these weeks, he is owed an additional $296.96 per week.[3]   During this time period there were 364 days or approximately 52 weeks.   Thus, he is owed $15,441.92 in unpaid overtime for this time period.   Taken together, the Court recommends $147,806.24 in damages for unpaid overtime.

ii.  *Minimum Wage*

Escobar claims that he worked the last three weeks of work without pay.   As he asserts that he worked until early January 2014, the Court construes his last three weeks of work as December 11, 2013 through January 1, 2014.   In choosing the minimum wage for calculation purposes, "both the FLSA and the NYLL specify that, where the other statute prescribes a higher minimum wage, the higher wage shall control."   *Gao v. Perfect Team Corp.*, No. 10CV1637, 2016 WL 1533537, at *3 (E.D.N.Y. Feb. 9, 2016), (Report and Recommendation), *adopted by*, 2016 WL 1464556 (E.D.N.Y. Apr. 13, 2016) (citing 29 U.S.C. § 218(a) and N.Y. Lab. L. § 652 (1)).   The minimum wage under the federal law for the three week period was $7.25

---

[2] The Court calculated this amount by subtracting the amount actually received each week, $1,500 ($1,250 for work performed Monday through Friday plus $250.00 for work performed Saturday) from the amount Escobar should have received each week, $2,046.96 (hourly rate of $31.25 multiplied by 40 hours, plus an hourly overtime rate of $46.88 multiplied by 17 overtime hours worked).

[3] The Court calculated this amount by subtracting the amount actually received each week, $1,750 ($1,250 for work performed Monday through Friday plus $500.00 for work performed Saturday) from the amount Escobar should have received each week, $2,046.96 (hourly rate of $31.25 multiplied by 40 hours, plus an hourly overtime rate of $46.88 multiplied by 17 overtime hours worked).

an hour.  *See* 29 U.S.C.A. § 206(a)(1).  Under the NYLL, it was $7.15 until December
30, 2013, and $8.00 on and after December 31, 2013.  N.Y. Lab. Law § 652(1).  Thus,
the Court will utilize the federal minimum wage for December 11, 2013 through
December 30, 2013, and the New York rate for December 31, 2013 through January
1, 2014.

Plaintiff has not proposed any amount that he believes he is owed for this three
week period.  However, there is no dispute as to the following facts:  (1) Escobar
worked 57 hours per week; and (2) Plaintiff worked 6 days each week, Monday
through Saturday.  As such, Escobar worked approximately 9.5 hours per day.
Relying on this information, the Court calculates Plaintiff's minimum wage damages
as follows:  (1) for Wednesday, December 11, 2013 through Saturday, December 14,
2013, Plaintiff is entitled to 21 hours at the federal minimum wage and 17 hours at
the overtime rate[4] which amounts to $337.13; (2) for Sunday, December 15 through
Saturday, December 21, Escobar is entitled to 40 hours at the federal minimum wage,
plus 17 hours at the overtime rate, which amounts to $474.88; (3) for Sunday,
December 22 through Saturday, December 28, Escobar is similarly entitled to 40
hours at the federal minimum wage, plus 17 hours at the overtime rate, which
amounts to $474.88; (4) finally, for Sunday, December 29 through Wednesday,
January 1, 2014, Escobar is entitled to 9.5 hours at the federal minimum wage of
$7.25 an hour, and 19 hours at the state minimum wage of $8.00 an hour, which

---

[4] Presumably, by Friday, December 13, Plaintiff would have worked 40 hours only two hours
into the day's shift.  As such, he is entitled to overtime pay for the remaining 17 hours that he worked
during this week.

amounts to $220.88.  Accordingly, the Court recommends that Escobar be awarded $1,507.77 for unpaid minimum wage payments.[5]

### iii. *Improper Pay Stubs*

Pursuant to Section 198(1-d) of the NYLL, an employer who fails to provide pay stubs must pay $250.00 for each work day that the violation occurred, not to exceed $5,000.  N.Y. Lab. Law § 198(1-d).  Plaintiff was not provided with pay stubs for the entire year of 2013.  Escobar Aff. ¶ 16.  As $250.00 per day over an entire one year period exceeds $5,000, the Court recommends that Escobar be awarded damages for failure to provide pay stubs in the amount of $5,000.

### iv. *Failure To Provide A Notice And Acknowledgement Of Wage Rate*

Plaintiff also seeks damages for Defendants' failure to provide him with a notice and acknowledgement of wage rate.  This violation is punishable with a fine of $50.00 per day, not to exceed $5,000.  *See* N.Y. Lab. L. § 198(1-a).  As it is undisputed that Escobar never received this notice, the Court recommends that he be awarded $5,000 due to Defendants' failure to comply with NYLL § 195(1).

### 3.  Liquidated Damages

### i.  *Recovery Under The FLSA And NYLL*

Courts in this Circuit are "divided as to whether overlapping liquidated damages awards are available under the FLSA and the New York Labor Law."  *See Valdez*, 2016 WL 3079028, at *6.  However, "[t]he majority view is that plaintiffs may

---

[5] The Court notes that Escobar did not assert a breach of contract claim for his full wages during this period and so the Court does not address it.

recover liquidated damages under both statutes . . . ." *Id.*; *see also Eschmann*, 2014 WL 1224247, at *8 ("Despite the denial of some district courts within this circuit of simultaneous recovery of liquidated damages, the court notes that the majority view is that a plaintiff may recover liquidated damages under both statutes."). In reaching this conclusion, Courts reason that liquidated damages serve different purposes under each statutory scheme. *See McLean v. Garage Mgmt. Corp.*, No. 09 CIV. 9325, 2012 WL 1358739, at *10 (S.D.N.Y. Apr. 19, 2012) ("FLSA liquidated damages and NYLL liquidated damages serve fundamentally different purposes, and the plaintiffs are entitled to both FLSA and NYLL liquidated damages for unpaid wages."). Specifically, liquidated damages under the FLSA "are not penal in nature, but serve a compensatory purpose," *Eschmann*, 2014 WL 1224247, at *8, whereas under the NYLL, liquidated damages "constitute a penalty to deter an employer's willful withholding of wages due." *Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 265 (2d Cir. 1999) (quotation omitted). Here, considering Defendants' failure to oppose this claim, the Court agrees with the majority view that Plaintiff can recover liquidated damages under both statutes.

## ii. *FLSA*

Under the FLSA, liquidated damages are awardable in an amount equal to the unpaid minimum wage and overtime "unless the employer can show that it acted in good faith." *Valdez*, 2016 WL 3079028, at *6. To establish good faith, the employer must show that it "had reasonable grounds for believing that it['s conduct] was not [in] violation of the FLSA . . . ." *Ahmed v. Subzi Mandi, Inc.*, No. 13-CV-3353, 2014

WL 4101224, at *6 (E.D.N.Y. May 27, 2014), (Report and Recommendation), *adopted by*, 13-CV-3353, 2014 WL 4101247 (E.D.N.Y. Aug. 18, 2014) (alteration omitted). Here, Defendants claim that the violations were "not egregious and were truly meant to maintain the plaintiff's employment during the past great recession." DE [34]. Although believing that the violations were "not egregious," Defendants do not claim that they believed they were acting in accordance with the statute. *See Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999) *holding modified by Zheng v. Liberty Apparel Co.*, 355 F.3d 61 (2d Cir. 2003) ("The employer bears the burden of proving good faith and reasonableness, but the burden is a difficult one, with double damages being the norm and single damages the exception."). Accordingly, the Court recommends that Defendants be awarded liquidated damages under the FLSA.

Turning to calculations, Defendants' are entitled to liquidated damages under the FLSA for May 16, 2011 through January 1, 2014. This period encompasses 961 days or approximately 137 weeks, which amounts to $74,933.52 in overtime due for this period under the FLSA (137 weeks multiplied by the weekly amount of overtime due, $546.96). He is similarly entitled to $1,507.77 in unpaid minimum wage payments. Combining the two calculations, the Court recommends that Plaintiff be awarded $76,441.29 in liquidated damages for his claims under the FLSA.

iii. *NYLL*

a.  Willfulness And Good Faith Standard

Escobar's claim for liquidated damages under the NYLL must be determined under two different versions of the statute. "Prior to November 24, 2009, a prevailing

plaintiff was entitled to recover [] liquidated damages only if the plaintiff could prove that the employer's NYLL violations were 'willful.'" *Eschmann*, 2014 WL 1224247, at *9 (quoting N.Y. Lab. Law § 198(1–a) (McKinney's 199). The willfulness standard is treated the same as under the FLSA's statute of limitations analysis. *See Kuebel*, 643 F.3d at 366 ("The district court reasonably concluded, and the parties do not contest, that the NYLL's willfulness standard does not appreciably differ from the FLSA's willfulness standard.") (quotation omitted).   However, beginning on November 24, 2009, the NYLL was amended to provide for liquidated damages "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law." *Eschmann*, 2014 WL 1224247, at *9.  As discussed above, Defendants behavior was both willful and not made in good faith, and therefore the Court recommends that Plaintiff be awarded liquidated damages for his NYLL overtime and minimum wage claims.

### b.  Calculations

Turning to calculations, the amount of liquidated damages that may be awarded under the NYLL varies.  "For all [] claims that occurred on or before April 8, 2011, NYLL liquidated damages [are] equal to twenty-five percent of the total amount of wages to be found due." *Cardoza v. Mango King Farmers Mkt. Corp.*, No. 14-CV-3314, 2015 WL 5561033, at *13 (E.D.N.Y. Sept. 1, 2015), (Report and Recommendation), *adopted by*, 2015 WL 5561180 (E.D.N.Y. Sept. 21, 2015) (internal quotation omitted).  "For all NYLL claims that occurred on or after April 9, 2011, the

employer is liable for liquidated damages equal to one hundred percent of the total amount of wages found to be due." *Id.* (citing N.Y. Lab. Law. § 663(1)).

Here, the relevant time periods are broken down as follows: (1) from May 16, 2008 through October 31, 2008 there were 168 days or approximately 24 weeks, and Escobar is owed $546.96 in unpaid overtime for each week, yielding a total of $13,127.04; (2) from November 1, 2008 through October 31, 2009 there were 364 days or approximately 52 weeks, and Escobar is owed $296.96 in unpaid overtime for each week, amounting to $15,441.92; (3) from November 1, 2009 through April 8, 2011 there were 523 days or approximately 75 weeks, and Escobar is owed $546.96 in unpaid overtime for each week, yielding $41,022.00; (4) from April 9, 2011 through January 1, 2014 there were 998 days or approximately 143 weeks, and Escobar is owed $546.96 for each week, amounting to $78,215.28; (5) from December 31, 2013 through January 1, 2014, Plaintiff is entitled to unpaid minimum wage damages yielding $1,507.77. Twenty-five percent of the first three periods, prior to April 8, 2011, is $17,397.74. Together with the one hundred percent of the fourth and fifth periods, Escobar is entitled to $97,120.79 in liquidated damages under the NYLL. Accordingly, the Court recommends that Plaintiff be awarded a total of $97,120.79 in liquidated damages under the state statute.

### 4. Prejudgment Interest

Plaintiff also seeks prejudgment interest on "withheld wages" under the NYLL. Pl. Mem. Law at 23. Although it is "well settled" that prejudgment interest is not awardable under the FLSA, *Begum v. Ariba Disc., Inc.*, 12-CV-6620, 2015 WL 223780,

at *3 (S.D.N.Y. Jan. 16, 2015), "the NYLL permits the award of both liquidated damages and pre-judgment interest." *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 48 (E.D.N.Y. 2015).   Under the New York Civil Practice Law and Rules ("CPLR"), "[i]nterest shall be at the rate of nine per centum per annum . . . ." N.Y. C.P.L.R. § 5004.  Where, as here, unpaid wages are "incurred at various times, interest shall be computed . . . from a single reasonable intermediate date."  N.Y. C.P.L.R. § 5001(b); *Coulibaly v. Millennium Super Car Wash, Inc.*, No. 12-CV-04760, 2013 WL 6021668, at *15 (E.D.N.Y. Nov. 13, 2013).  A common date is "[t]he median date between the earliest ascertainable date the cause of action existed and the date the action was filed . . . ."  *Gunawan*, 897 F. Supp. 2d at 93.  Courts have discretion in choosing a reasonable date from which to calculate pre-judgment interest.  *See Fermin*, 93 F. Supp.3d at 49 ("Courts applying N.Y. CPLR § 5001 have wide discretion in determining a reasonable date from which to award pre-judgment interest . . . .") (internal quotations omitted).

Here, the Court chooses a reasonable intermediate date of May 16, 2011, approximately three years between the earliest ascertainable date the cause of action existed, May 16, 2008, and the date the action was filed, May 16, 2014.  The overtime and unpaid compensation due under the NYLL is $149,314.01.  The Court calculates pre-judgment interest on this amount at a rate of 9% per year as $69,921.18, accruing at a daily rate of $36.82.[6]  Accordingly, the Court recommends that pre-judgment

---

[6] This figure was reached by taking the number of days between the mid-point selected, May 16, 2011, and the date of this Order, July 27, 2016 (1,899 days) and multiplying it by the daily interest rate of $36.82 ($149,314.01 [principal amount] x 0.09 [yearly interest] = $13,438.26 (yearly interest) / 365 days = $36.82 per day interest).

interest be awarded amounting to $69,921.18, with $36.82 accruing each day until judgment is entered.

### B.  Contract Damages

Finally, the Court turns to Plaintiff's claim that he is owed wages pursuant to an oral agreement for the period of November 20, 2009 through April 16, 2010. Specifically, he claims that he was paid "$10,045.32 less than what I should have been paid during this time period." Escobar Aff. ¶ 38.  Although Escobar establishes that Defendants are liable for breach of an oral contract regarding the difference in his wages, there is a triable question of fact as to the amount owed.  Plaintiff submitted two handwritten notes, claiming they were written by Michael Del Monaco.  *See* Feather Aff. Ex. K (Handwritten Notes), DE [31-13].  The first note has "Juan" written at the top, and at the bottom states that the "[t]otal owed through this Friday 4/16/10" is $10,045.32.  *Id.* at 1.  The second note, also with "Juan" at the top, states that "[t]otal owed through this Friday 4/16/10" is $7,321.93.  *Id.* at 2.  Further, Escobar states in his brief that "while the parties disagree as to how much is owed by the Defendants to the Plaintiff, the fact that monies are owed is uncontroverted."  Pl. Mem. Law at 21.  As such, there is a question of fact as to the amount that is owed for the breach of the oral contract. Accordingly, the Court recommends that damages for Plaintiff's breach of contract claim be denied at this time and addressed at trial.

### V.  Conclusion

For the reasons set forth above, the Court respectfully recommends that summary judgment be granted as to:  (1) Escobar's unpaid overtime and minimum

wage claims under the FLSA and NYLL; (2) violation of the NYLL regarding Defendants' duty to provide pay stubs and a notice and acknowledgment of wage rate; (3) liability for breach of an oral contract regarding a reduction in wages from November 2009 through April 16, 2010; and (4) liquidated damages, specifically that Escobar is entitled to liquidated damages under both the FLSA and NYLL. Regarding damages, the Court recommends that Plaintiff be awarded:   (1) compensatory and statutory damages amounting to $159,314.01, comprised of: $147,806.24 in unpaid overtime, $1,507.77 in minimum wage damages, $5,000 for failure to provide pay stubs, and $5,000 for failure to provide a notice of wage; (2) liquidated damages amounting to $173,562.08, comprised of:  $76,441.29 under the FLSA and $97,120.79 under the NYLL; and (3) $69,921.18 in pre-judgment interest, accruing at a daily rate of $36.82 until judgment is entered.   The Court further recommends that no damages be awarded at this time as to Escobar's breach of contract claim due to a question of fact as to the amount of such damages.

## VI.   **Objections**

A copy of this Report and Recommendation is being served on all parties by electronic filing on the date below.   Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of receipt of this report.   Failure to file objections within the specified time waives the right to appeal the District Court's order.   *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72; *Ferrer v. Woliver*, No. 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20,

2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchs. Bank*, 84

F.3d 52, 60 (2d Cir. 1996)

Dated:      Central Islip, New York
           July 27, 2016

<u>s/ Steven I. Locke</u>
STEVEN I. LOCKE
United States Magistrate Judge

34